S. CANET & Co., *S. en C.*, ET AL., Plaintiffs and Appellants, *v.* N. SANTINI & Co., INC., ET AL., Defendants and Appellees.

No. 5523. Argued December 16, 1931.—Decided November 25, 1932.

*López de Tord & Zayas Pizarro* for appellants.   *C. Domínguez Rubio* and *M. Guzmán Texidor* for appellees.

Mr. Justice Wolf delivered the opinion of the Court.

The complaint in this case averred that Cándido Díaz being the owner of a piece of property sold it to the firm of José Julián Pagán e Hijos with a right of repurchase; that the deed was executed before the notary, Miguel Guzmán Texidor, one of the defendants in this case; that the right of repurchase or what may be considered as the equity of the property had no value at the time of the deed and thereafter; that despite these facts, six or seven months later, Miguel Guzmán Texidor, in representation of N. Santini & Co., Inc., filed an action for the recovery of money in the District Court of Guayama against Cándido Díaz, and at the instance of the said attorney the property which before said notary Guzmán Texidor had been sold by Cándido Díaz to the firm of José Julián Pagán e Hijos, was put up at auction and sold to the plaintiff, S. Canet & Co., *S. en C.*, represented by its attorney in fact, Braulio Castillo, for the sum of $1,225, of which $1,001.22 was turned over to N. Santini & Co., Inc., in payment of their judgment, $100 was left on deposit for another suit, and $123.78 was turned over to the debtor, Cándido Díaz.   The complaint contained an averment that the plaintiff had acted in good faith and at the time of the purchase thought that Cándido Díaz was the owner of the property; that when the plaintiff tried to take possession of the property it found José Julián Pagán e Hijos in possession thereof by virtue of the first deed, and that when the plaintiff tried to record the title in the registry of property it could not do so because the property had not been recorded in the name of Cándido Díaz nor in the name of anybody else.   The complaint then goes on to charge that all the defendants, namely, N. Santini & Co., Inc., Cándido Díaz, and Miguel Guzmán Texidor, had konwledge of the fact that Cándido Díaz was not the owner of the property, and that said defendants combined to defraud the plaintiff, selling at public auction a

property as belonging to Cándido Díaz when the defendants knew that it belonged to a third person. The complaint contained a second count wherein the plaintiff reproduced the averments of fraud and tortious acts and claimed punitive damages in the sum of $2,800. The complaint was for the payment of $1,225 of the first count and the other amounts claimed in the second count, plus interest and costs.

The answer denied the facts alleged in the complaint and the case went to trial. The court among various other considerations found that the fraud had not been proved. In an attempt to prove fraud, the plaintiff put the attorney and notary, Miguel Guzmán Texidor, on the stand. He explained that it was true that at the time of the auction sale he had in his possession a deed of sale with right of repurchase to José Julián Pagán e Hijos, but that he had omitted to record it. In point of fact, the record discloses that it became necessary to begin a dominion title proceeding. This witness explained that he was not originally the attorney for N. Santini & Co., Inc., but that he was their attorney at the time of the auction sale; that nevertheless he was not present at the auction sale.

Outside of these facts, there is nothing to show that Guzmán Texidor or anybody else took any active steps to induce the plaintiff, S. Canet & Co., to buy in this supposed property that had been attached by N. Santini & Co., Inc.

As we have said, the plaintiff itself put Guzmán Texidor on the stand, and while it could have proved the facts to be otherwise than he stated, yet, to a great extent, it vouched for the credibility of that witness. Certainly the court was entitled to believe a witness that the plaintiff itself put on the stand. This witness further said that at the time of his acting for N. Santini & Co., Inc., he had no particular recollection of the deed to José Julián Pagán e Hijos. The gravamen of the charge in this case rests upon the plaintiff, and we see no way of going behind the holding of the court below that there was no proof of fraud against this attorney. Of course

it was a suspicious act that he should have intervened in the deed and then represented N. Santini & Co., Inc., but there is not the slightest evidence that he did so with the intention of perpetrating a fraud against the plaintiff.

Perhaps one of the most suspicious circumstances in this case is the fact that Cándido Díaz accepted the sum of $123.78 when in point of fact the property had been transferred by him to José Julián Pagán e Hijos. Similarly to M. Guzmán Texidor, Cándido Díaz was called as a witness for the plaintiff. At the instance of the plaintiff he took the stand twice. The record shows that when the auction sale took place Cándido Díaz was still actually in possession of the property which possession he later transferred to José Julián Pagán e Hijos. As a witness he said that he accepted the $123.78 because the marshal turned it over to him under the order of the court. In other words, he was being paid for any supposed equity of redemption that he had in the property. A part of the discussion in this case turned upon the question of whether the deed that he had given to José Julián Pagán e Hijos was to be considered as a deed for reconveyance simply or as a mortgage. If it was a mortgage there might be some slight legal justification in Cándido Díaz's accepting the $123.78 as his remaining interest in the property. In any event the fact that he accepted the money when it was turned over to him by the marshal can not be considered as a fraud or malicious combination with anybody else to injure the plaintiff. A good deal of the evidence in this case was with regard to the value of the property in question and whether the so called right of repurchase, or equity, or redemption had any value.

Either no fraud or knowledge of fraud could be imputed to N. Santini & Co., Inc., from the record in this case. They had the idea that the property belonged to Cándido Díaz. We do not find that the combination of the three defendants in taking part in the sale was proved. Even supposing that the acts of Guzmán Texidor were fraudulent there is no

evidence that he performed them in combination with Cándido Díaz or N. Santini & Co., nor was there any circumstantial evidence from which the inference might be drawn. We agree with the appellant that it is difficult to prove fraud, especially, as it says, where an attorney is one of the fraudulent actors, but a good deal more is required from a plaintiff than was shown in this case.

With regard to any possibility of action against Guzmán Texidor for fraud or deceit, this was not the theory of the action and, furthermore, the court below found no satisfactory proof of such fraud or deceit.

The plaintiff also alleged that, as against No. Santini & Co., Inc., a right of recovery of money unduly had or obtained should have prevailed. The appellant in fact cites jurisprudence of the American courts to the effect that money so obtained should be paid over to the plaintiff. However, this was not the theory of the present action. The defendant, N. Santini & Co., Inc., was in no way advised that the plaintiff intended to base its action on the fact that the title to the property in Díaz had failed. Moreover, the appellee draw our attention to section 1392 of the Civil Code, which provides:

"There shall be no liability for losses and damages in judicial sales, but all the other provisions of the preceding section shall be applied."

The plaintiff, then, would have a right perhaps to recover the price but not to an action in damages, as was the theory of the appellant in this case. Against N. Santini & Co., Inc., alone, section 1392 would be the only one applicable and the complaint in this case is not based on that theory.

A good part of the brief of the appellant attacks the conclusions of the court and indeed some of them may be erroneous. The appellant insists that a number of things done by Guzmán Texidor and by Cándido Díaz were all consistent with the idea of a conspiracy although with the appear-

ance of innocence, but, as we are holding, the proof of fraud should be stronger than it is in this case.

We find no error and the judgment should be affirmed.

Mr. Justice Hutchison concurs in the judgment.

Mr. Córdova Dávila took no part in the decision of this case.